HENRY GERNER v. CHARLES E. YATES ET AL.

FILED DECEMBER 18, 1900.   NO. 11,249.

1. **Verdict:** BETWEEN DEFENDANTS: CONFLICTING EVIDENCE: SAME AS TO BOTH. A verdict in favor of one defendant and against another, based upon conflicting evidence, which is the same as to both defendants, can not be permitted to stand as to either.

2. **Banks:** FINANCIAL CONDITION: PUBLISHED REPORT: MISSTATEMENT: ACTION FOR DECEIT. A published report of the financial condition of a bank in which the resources and liabilities are equally inflated is not such a material misrepresentation as will support an action for deceit, unless by such report the condition of the bank is made to appear to be better than it actually is.

Gerner v. Yates.

3. **National Bank:** STATEMENT: OVERDRAFTS: FALSE DESCRIPTION. A published statement of the financial condition of a national bank in which a portion of its overdrafts is described as "loans and discounts" is materially false.

4. ——: REPORT TO COMPTROLLER: ACTION FOR DECEIT: BASIS. A report of a national bank to the comptroller of the currency which complies with the law and regulations of the comptroller can not be made the basis of an action for deceit because the item of interest on rediscounts was deducted from undivided profits instead of being made to appear specifically in such report.

5. ——: ——: FINANCIAL CONDITION: LIABILITY OF DIRECTOR. In an action for deceit against the officers of a national bank who published a false report as to its financial condition, upon which plaintiff relied, one of the directors can not escape liability on the ground that there was no special reliance upon him, if it appear that the plaintiff relied on the report and the entire directorate.

6. **Discharge in Bankruptcy:** DEFENSE TO ACTION FOR FRAUD: FIDUCIARY CAPACITY. A discharge in bankruptcy is no defense to an action based upon the defendant's fraud or other misconduct while acting as an officer or in any fiduciary capacity.

ERROR from the district court for Lancaster county. Tried below before CORNISH, J. *Reversed.*

*Halleck F. Rose* and *Billingsley & Greene,* for plaintiff in error.

*Chas. O. Whedon* and *J. W. Deweese, contra.*

SULLIVAN, J.

This was an action brought by Henry Gerner against Charles E. Yates, Charles W. Mosher and Richard C. Outcalt in the district court of Lancaster county. On the first trial the defendants were successful, but the judgment in their favor was reversed by this court and the cause remanded for further proceedings. *Gerner v. Mosher,* 58 Nebr., 135. A second trial of the issues resulted in a verdict and judgment in favor of Yates and against Mosher and Outcalt. Gerner brings the record here for review complaining of the decision in favor of Yates; and Mosher and Outcalt have filed a petition in error asking for a reversal of the judgment against them.

The verdict is an anomaly; it is in irreconcilable conflict with itself. It is in effect a declaration by the jury that the material allegations of the petition are both true and false. It is such an evident absurdity that it can not, if based upon conflicting evidence, support the judgment in favor of either the plaintiff or Yates. The contention of defendants is that one of the material averments of the petition is not sustained by any proof and that, therefore, the judgment should be affirmed as to Yates and reversed as to Mosher and Outcalt.

Comprehension of the questions raised will be aided by reproducing here a portion of the opinion of Commissioner IRVINE reversing the first judgment. "The petition alleges that Mosher was the president of the Capital National Bank, Walsh its vice-president, and Outcalt its cashier, and that the other defendants named, together with Mosher, constituted its board of directors. The petition is in two counts, the first alleging that on May 18, 1887, a report was made by the defendants, to the comptroller of the currency, of the resources and liabilities of said bank as they existed May 13, 1887; that said report was sworn to by Outcalt as cashier and attested as correct by Mosher, Holmes, and Yates as directors; that the defendants caused said report to be published in the *State Journal*, a newspaper published in Lincoln, 'for the purpose of inducing others, and particularly this plaintiff, to deal with said corporation and to repose in it and them, its directors and managing officers, and to induce others, and particularly this plaintiff, to purchase its capital stock and make investments therein, and represented and held out said statement to be a true statement of the financial condition of said corporation.' The report is then set out in terms, and it is alleged that said report was false, in that it overstated the mortgages, stocks and bonds held by the bank to the amount of $30,000, the amount due the bank from reserve agents, about $76,000, and its loans and discounts $50,000; that said report and false representations were made

by said four defendants with the knowledge, assent, and co-operation of all the other defendants, and the same were, as they and each of them well knew, wholly false and untrue; that plaintiff believed said representations to be true, and on the faith thereof purchased from Charles Hammond on July 11, 1887, fifty shares of the capital stock of said corporation for the sum of $6,250; that it would have been worth said sum had the said report been correct, but in fact the bank was insolvent and the stock worthless; that January 22, 1893, the bank failed; that the stockholders have been assessed one hundred cents on the dollar on their stock, and judgment rendered against the plaintiff for said assessment; that notwithstanding that the bank had no net earnings, dividends were from time to time declared, and suit has been brought against the plaintiff to recover dividends by him received. The second cause of action is, substantially, pleaded in the same manner, charging a false report of the condition of the bank September 30, 1889, and the purchase by the plaintiff, in reliance on that report, in November, 1889, of fifty shares of stock from Henry E. Lewis for the price of $7,250." The plaintiff alleged that the first report was false in three particulars and the second in two.

The defendants insist that the evidence neither shows, nor tends to show, that any material fact stated in either report was false. We shall consider in their order the several averments of the petition charging the defendants with having made false representations, and determine whether any of them is supported by competent proof. The first is as follows: "That instead of said bank having $44,018.84 of mortgages, stocks and bonds, other than United States bonds to secure circulation, it had no more than $14,018.84 of such securities as assets." The jury might have found that this allegation was established by the evidence, but they could not have done so without at the same time finding that the liabilities of the bank were less than they appeared to be by the pub-

lished report. In other words, if the statement was false, the resources and liabilities were equally inflated; and thus the actual condition of the bank—the net worth of the property—was truly disclosed. Whether there was or was not an inflation of the resources and liabilities in the published report is not material. According to the undisputed testimony of the witness Boggs, the actual and apparent value of the stock and assets of the bank was the same in either case. The representation was not actionable, because it was not false in any material respect.

It is charged that the report was also false because, "instead of having the sum of $119,280.88 due it from approved reserve agents, it had no more than $43,344.52 due from said source." The evidence, however, conclusively shows that the latter sum was due the bank from two reserve agents, the Chemical National Bank of New York and the Commercial National Bank of Chicago, and that there was due from other reserve banks $86,926.82, or altogether, $130,271.34.

It is further alleged in the first count of the petition that the Capital National Bank, "instead of having $771,972.87 of loans and discounts, had no more than $721,972.87 of such assets." It is indisputably established by the admission of Gerner and other evidence that the bank's overdrafts, at the time the first report was made out, amounted to $58,071.35 and that $50,000 of this sum appeared in the report under the head "loans and discounts." Counsel for plaintiff contends that it should not have appeared under that head, and that the report was, therefore, false. That overdrafts are loans is, of course, too obvious to admit of dispute; and that they are regarded by bankers as first class loans and frequently reported to the comptroller of the currency under the caption "loans and discounts" is shown by the evidence of Charles T. Boggs and Oscar Callahan, who were the only witnesses who testified on that point. These witnesses also testified, and their testimony is not contra-

dicted, that the value of the assets and stock of the bank was not in any way affected by the fact that $50,000 of the amount reported as loans and discounts was made up of overdrafts. The argument of defendants upon this branch of the case is that the representation with respect to the amount of loans and discounts was neither false nor material. This view of the matter does not commend itself to our judgment. The report conveyed to the plaintiff and to the public generally a false impression. It in effect declared that the loans and discounts made in the usual way at the bank counter amounted to $771,972.87, and that the entire amount due from customers who had been permitted to overdraw their accounts was only $8,-071.35. It may be that loans in the form of overdrafts were as safe and profitable as any others, but of this plaintiff was entitled to judge for himself. He might be of opinion that a bank whose volume of business was no greater than that of the Capital National Bank and which permitted its depositors to overdraw their accounts to the extent of $58,017.35 was recklessly managed. It is reasonable to infer that had he known the true character of the bank's loans, the contract with Hammond would not have been made. It is not always easy to determine when a representation is material; but the general rule seems to be that it is to be regarded as material if the complaining party would not have done the act by which he was injured, had he known that the representation was false. *Graves v. United States*, 165 U. S., 323, is cited in support of the contention that it was proper for the bank to report overdrafts as loans and discounts. We have examined that case with care, but are not able to see that it is in point. So far as it has any bearing at all upon the question now under consideration, its implication is plainly against the defendants. We can not escape the conclusion that the statement of the report in regard to overdrafts and loans and discounts was a false representation of material facts.

In the second count of the petition it is alleged that

"instead of said bank having due to it from approved reserve agents $76,238.34, it had not more than $36,-238.34, and the amount of said bank's reserve funds was in said statement falsified more than $46,958." The books of the bank show conclusively that this allegation is not true. While there was not due from the reserve agents named in the schedule on the back of the report sent to the comptroller the amount appearing in the published report, there was more than that amount due from those agents and other approved reserve agents. Counting clearing house receipts which were entitled, under the national banking act (U. S. Revised Statutes, sec. 5192), to be considered as reserve funds, the bank had at the time in question reserve funds amounting to $93,923.95, which was $2,008.60 in excess of the reserve required by law.

It is also alleged in the second count that the published statement of September 30, 1889, "failed to show payment of interest on funds by said bank borrowed during the preceding month, which aggregated $2,895.64, said item being wholly omitted and the item of undivided profits being falsified, raised and increased in the sum of $2,895.64." The item omitted from the report appears on the bank's books as a resource, while undivided profits, discount, interest and exchange, amounting to $17,-107.37, appear on the books as liabilities. Instead of entering on the report to the comptroller the item of interest paid as a resource, it was deducted from the aggregate of the items of liability just mentioned, and the balance, being $14,211.73, was entered on the report as undivided profits. The result was precisely the same as though all the items had been set out. We know of no law or regulation established by the comptroller of the currency, which required the item of interest on rediscounts to appear specifically in the report.

The contention that Yates is not liable because Gerner did not specially rely upon him in purchasing stock of Hammond and Lewis is, we think, without merit. The

Gerner v. Yates.

evidence tended to show that the plaintiff relied on the reports and the entire bank directorate. How he could have done this without relying in some measure upon Yates, we are not able to understand.

The action is not barred by the statute of limitations. It was an action for relief on the ground of fraud and the statute did not begin to run until the fraud was discovered. Code of Civil Procedure, sec. 12. The defendants intentionally conveyed to the public the impression that they had actual knowledge of the facts stated in the reports which they attested. They had no such knowledge, and they were aware of it. By representing as true that of which they were consciously ignorant, they committed a fraud for which they are liable in a common law action of deceit. A man is guilty of willful falsehood when he asserts as of his own knowledge a matter of which he knows he is ignorant. *Hexter v. Bast*, 125 Pa. St., 52; *Nauman v. Oberle*, 90 Mo., 666; *Bullitt v. Farrar*, 42 Minn., 8.

Richard C. Outcalt pleaded a discharge in bankruptcy, but the trial court held that, under the facts of this case, such a discharge was not a defense. On the authority of *Chapman v. Forsyth*, 2 How. [U. S.], 202, the ruling is approved.

The evidence failing to conclusively establish the correctness of the judgment in favor of Yates, it is reversed as to all the defendants.

REVERSED AND REMANDED.