BARBORA ZITNIK, ADMINISTRATRIX, APPELLEE AND CROSS-APPELLANT, V. UNION PACIFIC RAILROAD COMPANY, APPELLANT; JOHN J. MULLEN, CROSS-APPELLEE.

FILED JUNE 12, 1912. No. 17,015.

1. Corporations: ACTION FOR DAMAGES: VERDICT: EVIDENCE. If a corporation and its employee or agent are sued jointly for damages alleged to be caused by negligence of the defendants, and there is a general verdict in favor of the employee and against the corporation defendant, the verdict cannot be sustained without evidence that employees or agents of the corporation other than the one so exonerated were guilty of negligence which was the proximate cause of the injury.

2. Negligence: ACTION: PLEADING AND PROOF. If the petition in an action for damages charges the defendants with certain acts of negligence, the proof must agree with the allegations, and the jury. is not at liberty to infer that the defendants were negligent in other matters not alleged.

3. ———: LAST CLEAR CHANCE. The rule of "the last clear chance" implies that the one charged with negligence knew the person injured was in a place of danger and negligently failed to avoid injuring him, but his testimony that he did not have such knowledge is not conclusive. Such knowledge may be shown by proof that the person injured was in a situation of imminent danger and so situated that the one injuring him, if he used his senses as human beings ordinarily do, must have known the danger.

4. ———: .———: EVIDENCE. The fact that the person injured was in a situation of danger and so situated that he could have been observed by the defendant must be proved by a preponderance of the evidence. The jury is not at liberty to estimate the probabilities in that regard without substantial proof.

5. Appeal: INCONSISTENT VERDICT. A verdict inconsistent with itself must be set aside upon application of all parties prejudiced thereby.

6. ————: REVERSAL: REMAND. The jury having found that the engineer in charge of the engine which killed the deceased was not negligent, and there being no evidence of negligence on the part of any other agent or employee of the defendent company, the plaintiff and the defendant company having both appealed, the judgment of the district court is reversed and the cause remanded.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Reversed.*

*John A. Sheean,* for appellant and cross-appellee.

*Smyth, Smith & Schall, contra.*

SEDGWICK, J.

Plaintiff, as administratix of the estate of her deceased husband, John Zitnik, commenced her suit in the district court for Douglas county against the defendants Union Pacific Railroad Company and John J. Mullen, to recover damages for the death of said John Zitnik, alleged to have been caused by the negligence of defendants. It is alleged that defendant Mullen was a locomotive engineer and in charge of a locomotive switch engine in use in the track yards of the company, and the decedent was an employee of said company, his duties, at the time of the alleged accident, being to keep the switches and tracks of the company in said yards clear of obstructions, and in which duties he was thus engaged; that on the 30th day of January, 1909, while Zitnik was engaged in said duties, and about the hour of 11 o'clock A. M., the defendants negligently caused a locomotive switch engine, belonging to defendant company, to move against, upon and over said Zitnik, thereby negligently inflicting injuries upon him from which he soon thereafter died.

The defendants filed separate answers to the petition, that of the company being: First, a general denial of all unadmitted allegations; second, an admission that Zitnik was killed at the time and place alleged; but denies that

"defendants, or either of them, negligently and carelessly, or without regard for the safety of said John Zitnik, caused a locomotive switch engine, belonging to the defendant railroad company, to move against, upon and over the said John Zitnik, thereby negligently and carelessly inflicting upon him the injuries which caused his death, but does not deny that the body of said John Zitnik was run over by a locomotive switch engine of defendant railroad company, of which defendant John J. Mullen was engineer." It is alleged that the decedent was guilty of contributory negligence. The defendant Mullen filed his separate answer, which was, in substance, the same as the answer of the railroad company. Plaintiff replied denying the contributory negligence of the decedent. Later, defendant company amended its answer, in which it is alleged, in substance, that the action was brought under the provisions of sections 10591 to 10593, inclusive, Ann. St. 1911, commonly known as the "Employers' Liability Law," and questioning the constitutionality of said sections. By these pleadings all question of the death of Zitnik by being run over by the switch engine of defendant railroad company is eliminated, and it is admitted that he was "run over by a switch engine" on the date named, and that he died on the same day, the only issue referring to his death being as to the negligence of defendants, and the contributory negligence of the decedent.

A jury was had, and at the close of the evidence the defendant Mullen moved the court for a peremptory instruction to the jury to return a verdict in his favor. The motion was overruled. Thereupon the defendant company presented a similar motion, which was overruled. The two defendants then joined in a similar motion on the same grounds, which was also overruled. To these rulings exceptions were separately taken. The jury returned a verdict in favor of defendant Mullen, and against the railroad company in favor of plaintiff, for the sum of $9,600. A motion for a new trial was

filed by defendant company. Plaintiff also moved for a new trial as against defendant Mullen. Both motions were overruled, when defendant company moved the court for a judgment in its favor notwithstanding the verdict. This motion was also overruled, and judgments were entered in accordance with the findings of the jury.

It appears from the evidence that Zitnik was one of the trackmen laboring on the tracks and switches in the yards of defendant. The 30th day of January, 1909, the day of the accident, was a cold day, the temperature being one degree below zero, and the wind blowing from the northwest at the rate of 22 miles an hour. During the forenoon the foreman directed Zitnik to go and examine the tracks and switches and report their condition. He went as directed, and soon thereafter returned and reported that there was some accumulation of snow in the switches. He was then directed to clean the switches of the accumulated snow. (There was little snow on the ground, but sufficient to be blown and packed in and about the switches.) He left the foreman for the purpose of discharging the duties imposed, and was seen later upon the tracks in the vicinity of the place where he was killed, but probably an hour or so before the accident. The first account we have of the engine on that day was just before the accident, when it was standing on one of the tracks near the Tenth street viaduct, headed west, and in charge of the engineer, fireman, and two persons on the running-board at the rear of the tender. The engine was started to the westward on one of the many tracks, and when it arrived at the Eleventh street viaduct, one block away, it ran over and injured Zitnik to such an extent that he almost immediately died. So far as is shown by the evidence, no person saw him immediately before the accident, nor at the time it occurred, and the first that was known of it was when the rear of the tender with the foot or running-board, on which the two men were standing, passed over Zitnik's body, when they jumped off the running-board, called the attention

of the fireman, giving the signal to stop, the fireman in turn notifying the engineer, when the engine was stopped, and the body, almost lifeless, was removed from the track. Life became extinct on the way to the hospital. The engine was running at the rate of two and one-half or three miles an hour as it approached the Eleventh street viaduct where Zitnik was killed. The northwest wind against which the engine was running caused the smoke from the engine to settle on the left or south side of said engine, and at times, at least, cut off the view of the fireman. The track was level and on a slight curve to the northward, with no cuts or fills. Just prior to the start the fireman shoveled fresh coal into the fire box, this making what is called a "green fire," which emitted an increased volume of smoke. The engine bell was kept ringing. As the engine bore a little to the northward following the curve in the track, the front end shut off the view of the engineer and brought the line within sight of the fireman, except as interrupted by the smoke. Upon an examination made at the place of the accident about two hours later, Zitnik's shovel and broom were found by the track, near the place where the engine probably struck him. Near where the accident occurred, and not far from where the shovel and broom were found, there was a small pile of snow which had the appearance of having been removed the morning on which the accident happened. No person was on the running-board in front of the engine. Zitnik was killed at about 11 o'clock A. M. As to the allegations of the answer, that the accident was the result of contributory negligence on the part of Zitnik, there is no direct evidence whatever. There was no allegation of negligence of the defendants, except the allegation above quoted, that the defendants negligently caused an engine "to move against, upon and over the said John Zitnik."

The engineer, who controlled the movements of the engine, was the defendant Mullen. If it was his negligence that caused the accident he was liable, and the

verdict must have been against him also. The jury found that there was no negligence on his part by finding a general verdict in his favor. The only other employees or agents of the defendant company that were in any way connected with the running of the engine were the fireman Walsh and the two men stationed upon the foot-board of the engine. It is not suggested by any one that the accident was due to any negligence of the men upon the foot-board. Unless the fireman was negligent, and his negligence was the proximate cause of the accident, the defendant company cannot be charged with negligence in running the engine. The only ground relied upon for imputing negligence to the fireman is derived from what is known as the doctrine of the last clear chance. If the fireman knew that Zitnik was in danger and could have saved him by the exercise of any and all reasonable means to that end, he was bound to do so, and his failure in that regard would be imputed to the defendant company. Some authorities hold that he could not be held negligent under this rule unless he knew that the deceased was in danger; others say that if he knew, or by the exercise of reasonable and ordinary care might have known, the situation of the deceased, he is charged with knowledge. Without going into refinements of definitions with regard to this element of the rule, it may be said that, while perhaps there are some unfortunate expressions in some of the numerous cases, the authorities are substantially agreed that the testimony of the person charged with negligence, that he did not have knowledge of the situation and danger of the deceased, is not conclusive. Such knowledge may be shown by evidence that the deceased was in a situation of imminent danger, and that the witness was so situated and so employed that he must, if he had used his senses as human beings ordinarily do, have known of the danger. The fireman testifies that he was looking out before the engine at the time of the accident; the engine was giving out large quantities of dense smoke; they were passing under the

viaduct which confined the smoke and so obstructed his view, and that he did not see the deceased. His statements as to existing conditions are not disputed by any other witness, but are corroborated by several. If we conclude that, notwithstanding this evidence, the jury were at liberty to find that he might and ought to have seen a man situated upon the track, and might and ought to have informed the engineer of the danger in time so that the engine could have been stopped and the accident avoided, still the principal fact necessary to the charge of negligence is wholly wanting. There is no evidence that Zitnik was in a situation where he could have been discovered by the fireman. Zitnik had been at work in these yards; he was seen there about an hour before the accident. We have no evidence of his whereabouts from that time until he was seen behind the engine after the accident. He may have been busily employed at his work on this particular track, and, because of the cold and storm, failed to observe the approaching engine; or, as he was not expected to work long in any one place, he may have been walking down these tracks to some point where his work might be necessary, or he may have been crossing these tracks. Whether he had been upon these tracks in this situation for some time so that the fireman would have time to observe his danger, or whether he was struck the moment he stepped upon the track, is not disclosed by the evidence. The engine was moving slowly, less than four miles an hour; the bell was ringing. That he should remain at work upon this track until the engine struck him seems improbable. It seems at least equally probable that he was going to some point in the yards, and, walking against the storm, crossed these tracks diagonally. These are only conjectures, and the evidence fails to prove that the deceased was on the tracks in a dangerous situation for such a length of time that he could have been seen by the fireman looking from the cab window. It is not the "probabilities" that are to be established by a preponderance of the evidence; the fact

itself must be so established. Instruction No. 1, requested by plaintiff, was misleading. Unless the jury could find from a preponderance of the evidence that deceased was in fact in a dangerous situation where he could be seen by the fireman, they could not assume that fact as probable, and then infer that the fireman was negligent in not seeing him.

It does not appear from the abstract that the petition alleged that the defendants were engaged in interstate commerce, and, for that and other reasons, we do not find it necessary to discuss the recent very important decision of the supreme court of the United States in *Mondou v. New York, N. H. & H. R. Co.*, 32 Sup. Ct. Rep. 169, in which it appears to be held that the act of congress (U. S. Comp. St. Supp. 1909, p. 1171), entitled "An act relating to the liability of common carriers by railroad to their employees in certain cases," and amendment, supersedes the laws of the states in so far as the latter cover the same field, and may be enforced in the state courts.

The verdict, therefore, against the defendant company and in favor of the engineer, there being no evidence of negligence on the part of any other agent or employee of the company in the matters alleged in the petition, is inconsistent with itself and cannot be sustained. The plaintiff and the defendant company having both appealed, the judgment is reversed and the cause remanded for further proceedings.

REVERSED.

REESE, C. J., dissenting.

I find it impossible to get the consent of my mind to concur in this decision. The day was bitter cold and a most disagreeable one. The decedent was ordered by his foreman to inspect and report upon the condition of the tracks and switches in the track yard, which he did, and was then told to clear the switches and tracks of any snow or other obstructions which could interfere with

their use.  He went to his work and was seen and known to be within the grounds and among the tracks pursuing his work.  Owing to the inclement condition of the weather, it was known that he should be warmly dressed in order to protect himself from the biting cold and high wind.  Under all the conditions shown, it was necessary that care should be taken to avoid accidents.  There were two switchmen employed with the engine by which decedent was killed.  They were both riding upon the rear foot-board of the forward moving engine.  No one was at the front.  If the volume of smoke emitted from the engine was so great as to cut off the views of the engineer and fireman, there was all the more necessity that every precaution be taken.  No precaution whatever was taken.  No one was at the front foot-board to warn any one of the approaching engine.  The engine was sent forward blindly with two switchmen at the rear who could see nothing in front, and no one in connection with the engine knew of the presence of decedent until his mangled body rolled from under the rear of the engine.  It goes without saying that, had one of those switchmen been at the front of the engine, Zitnik would not have been killed.  That must be self-evident to the mind of any sane and right-thinking person.

Was it negligence on the part of defendant not to employ those necessary safeguards?  Whose duty was it to decide that question?  If juries are to be of any practical use in the administration of justice, the solution of the question was for them.  The inference of negligence, or the want thereof, from these facts rested alone with and on them, and they *should* be permitted to decide the question as to defendant's want of care.  There is nothing in the evidence to show that the switchmen were under the direction of either the engineer or fireman.  If not, and if there was negligence (a question for the jury), whose negligence was it?  Most certainly that of the defendant company.  If that is true, the release of the engineer by the jury would furnish no just ground of complaint by

the employer. Was it negligence to order the man to work alone upon those switches and tracks under the conditions as they then existed? It was for the jury to say, considering all circumstances and conditions shown. There were other employees on and about those track yards who knew of Zitnik's presence on the tracks; yet no precaution was taken for his safety. True, the evidence is that the engine bell was kept ringing, but it is also shown that at the same time a train of cars was passing on a nearby track, and, considering the cold and high wind, the jury were justified in concluding that Zitnik did not hear or see the approaching engine before it ran him down. As shown by the testimony of the foreman of the gang of men with which Zitnik was connected, it was his custom and duty to warn the men of approaching cars. True, Zitnik had been sent out alone to the work on the tracks, but, under the circumstances, including this custom of the foreman, it was the province of the jury to consider this, as well as all conditions shown to have existed at the time, and arrive at their verdict upon the facts presented by the evidence. The court may be of the opinion that the uncontroverted facts are insufficient to sustain an inference of negligence, but the jury, being equally conscientious, may conclude that such an inference properly arises; the case being one where fair-minded men might arrive at different conclusions. In such case the whole matter rests with the jury. I do not say that the evidence in this case proves negligence on the part of defendant, for it is not the province of any member of the court to decide that question. It must (*should*) be left for the determination of the jury, and upon which the court should keep silent. Does the evidence tend to prove that there was negligence in running the engine as it was run without any safeguard whatever? If so, the matter does not rest with the court. In 2 Thompson, Law of Trials, sec. 1665, it is said: "The case must also *go to the jury* where, although the facts are not controverted, fair-minded men

might differ as to whether the inference of negligence should be drawn from them." This is elementary. *Railroad Co. v. Stout*, 17 Wall. (U. S.) 657; *Atchison & N. R. Co. v. Bailey*, 11 Neb. 332. And the rule has been recognized and followed by this court ever since the decision of those cases. If the verdicts of juries in such causes are to be set aside under circumstances like those presented in this case, and the burden assumed by the courts, the jury arm of our jurisprudence may as well be dispensed with, as our much vaunted "trial by jury" would be nothing more nor less than "a fraud, a delusion, and a snare."

FAWCETT, J., concurs in the above dissent.