PATRICIA CAMPBELL, APPELLANT AND CROSS-APPELLEE, V. CITY OF NORTH PLATTE, LINCOLN COUNTY, NEBRASKA, APPELLEE AND CROSS-APPELLANT.

132 N. W. 2d 876

Filed February 5, 1965. No. 35758.

Maupin, Dent, Kay & Satterfield, Clinton J. Gatz, and Donald E. Girard, for appellant.

Halligan & Mullikin and Baskins & Baskins, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, and BROWER, JJ., and ROBERT L. FLORY and ROBERT L. SMITH, District Judges.

SMITH, J.

A fireman died of coronary artery disease. His widow laid this action under that part of section 35-202, R. R. S. 1943, which provides for a pension in case "death is caused by or is the result of injuries received while in the line of duty." The record shows a judgment on a jury verdict for plaintiff, a judgment notwithstanding the verdict, this appeal by plaintiff, and a cross-appeal from denial of its alternative motion for a new trial.

The controversy is presented in two main parts: Existence of a fact question whether the disease was contracted in the line of duty, and the propriety of plaintiff's hypothetical question concerning medical causation.

On the first part we sketch evidence favorable to the verdict. See Wessel v. City of Lincoln, 145 Neb. 357, 16 N. W. 2d 476. From 1948 to his death at the age of 56 years, Walter J. Campbell was a full-time paid member

of the fire department of defendant, and served as assistant chief from 1951 through 1962. He also worked part time for land surveyors from 1960 to 1963.

The total number of fire alarms, other fire calls, and emergency calls for an ambulance during Campbell's shift was approximately 140 annually, but he did not answer all of them. From 1948 to 1958 he attended a mean of 42 alarm fires per year; from 1959 to 1962, 27. As assistant chief, he was the first to enter a flaming structure when the cost of delay was high. Witnesses described him as a perfectionist in performance of obligation to city as well as family.

We turn to the subject of his health. Temperance in eating and drinking and moderation in smoking are undisputed. Findings on medical examinations in 1948, 1951, and 1955 were essentially negative. In the fall of 1959 and later he complained of severe chest pain and pressure in his throat occurring mostly upon his return to the fire station from a call. In December 1961, a physician diagnosed coronary arteriosclerosis.

Campbell worked for a land surveyor on July 5 and 6, 1962. The following day—his third consecutive day off duty and the fifteenth day since his last call—symptoms of a coronary occlusion hospitalized him. When he returned to duty in October, he was assigned tasks limited to the fire station.. On March 11, 1963, he worked at the station from 2 to 4 p.m., and died at home at 9:30 p.m.

At the trial plaintiff called three expert medical witnesses, defendant called none. An internist found on hypothesis a direct causal relation between duty and disease. He depreciated the effect of physical exertion alone, but emphasized emotional stress, emotional - physical strain, and toxic effects. Indeed they constituted his frame of reference for diagnosis.

The internist explained that emergency responses of the body to stimuli push a substance through the coronary arteries. Repetition frequently thickens the in-

side lining and narrows the passages. Chest pain is the primary symptom. Later occlusion of an artery may occur when the substance slides or breaks loose from the lining.

The statute embraces disease contracted by a fireman while in the discharge of duty. Evans v. City of Lincoln, 147 Neb. 163, 22 N. W. 2d 565; Elliott v. City of Omaha, 109 Neb. 478, 191 N. W. 653. No complaint is made that a direct causal relationship in medicine will not permit an inference which meets this standard. To refine further is to mistake one science for another. When the question is medical, medicine must give us the answer. See, McNaught v. New York Life Ins. Co., 145 Neb. 694, 18 N. W. 2d 56; Long v. Railway Mail Assn., 145 Neb. 623, 17 N. W. 2d 675.

The law declines to say that Campbell died in the common struggle for existence, that the design for disease and death cannot be fairly traced in his calling. Duty brought peril—not only the obvious flame and smoke but also the subtler stress and strain. Precedent has not been oblivious. See, Wessel v. City of Lincoln, *supra;* Elliott v. City of Omaha, *supra;* Town of Cicero v. Industrial Commission, 404 Ill. 487, 89 N. E. 2d 354.

We are told that this assault on his emotions was only a feint. The jury heard that he was cool and efficient in fire fighting and seldom experienced visible bodily injury. But it also heard that ambulance calls disquieted him and that firemen of defendant experience stress and strain. We pass permissibility of an inference that in 1959 the first symptoms of disease were demonstrated in line of duty. Other considerations are not amiss. Alarms and calls themselves may have activated his emergency mechanism. Self-control may have belied readiness for action. We suggest the possibilities only to demonstrate the difficulties of an uninformed venture into medicine.

The feint is said to be patent from a gap in medical causation. The disease struck hard only during leisure.

The first attack in time was remote from duty to city but not far distant from service to surveyor. Plaintiff failed to explore other aspects of Campbell's emotional life. At best the argument accepts the hypothetical opinions of two general practitioners and rejects the hypothetical opinion of the internist. The assumptions which were material to the conclusion of the internist are supported by evidence. Plaintiff bridged the gap.

A questioner on an appropriate subject may choose a hypothesis based on his theory of evidence which raises an issue of fact. See Vanderheiden v. State, 156 Neb. 735, 57 N. W. 2d 761. The answer of the expert witness will ordinarily sustain a verdict unless probative value is destroyed by impeachment. See, McNaught v. New York Life Ins. Co., *supra;* Longe v. Railway Mail Assn., *supra.*

The second part of the controversy originates in the overruling of defendant's objection to this hypothetical question concerning medical causation between duty and disease.

Plaintiff fashioned her hypothesis by condensing evidence of events which we have recounted. The question contains trifling inaccuracies. Defendant objected generally to insufficient foundation and assumption of facts not in evidence or contrary to the evidence. The first time, plaintiff requested defendant to particularize its objection. Arguments to the court were not reported. The objection was sustained, and the question was restated with minor amendments concerning the type of calls which Campbell had answered and the visible bodily injuries which he had received. Thereafter defendant interposed the general objection which is the basis of the present complaint.

Review is limited where a general objection has been overruled. It reaches only an obvious flaw; otherwise, specification is required. The purpose is to ease the burden on the trial court and to permit correction by the questioner. See Chicago, R. I. & P. Ry. Co. v. Archer,

46 Neb. 907, 65 N. W. 1043. A trial court possesses a discretion. See Metropolitan Life Ins. Co. v. Armstrong, 85 F. 2d 187. It was not abused.

We conclude that the evidence was sufficient to sustain the verdict of the jury. There being no error in the record prejudicial to the defendant, the order of the district court vacating the judgment for the plaintiff and dismissing her cause of action notwithstanding the verdict is reversed, and the cause is remanded to the district court with directions to reinstate the verdict and judgment in favor of the plaintiff.

REVERSED AND REMANDED WITH DIRECTIONS.

Note: Since this case was submitted, Robert L. Smith, District Judge, has become a Judge of this court.

SPENCER, J., dissenting.

I do not concur in the majority opinion. To do so is to interpret the provision of section 35-202, R. R. S. 1943, "In case of the death, while in the line of duty," as though it read "In case of death while in the employ." It is true the opinion is premised on and is an extension of the holding in Elliott v. City of Omaha, 109 Neb. 478, 191 N. W. 653, which interpreted the phrase where " 'death is caused by or is the result of injuries received while in the line of duty' " to include disease contracted in the line of duty (in that case pneumonia). There is a distinction, however, between contracting a disease which disabled the fireman immediately and resulted in his death 10 days later and this case where the fireman had a heart attack sitting in the living room of his home off duty and during a period when he had been under no special stress. The heart attack occurred on his third consecutive day off and 15 days after his last fire call. It is also pertinent to observe that for the past 5 years the fireman had been moonlighting. He had worked with a surveyor from 1 or 2 hours to 8 hours a day.

The medical expert did testify that firemen are subjected to special stress which could develop coronary

artery disease. He testified, however, that this is also true of physicians, attorneys, and businessmen. Stress is not peculiar to the occupation of a fireman. It is equally present in many other endeavors of life, including the various duties incident to employment as a surveyor.

I am in accord with the thought that ample provision should be made for the protection of the families of public employees engaged in hazardous occupations. It should, however, be initiated by the legislative process and not accomplished by judicial legislation.

BROWER, J., and ROBERT L. FLORY, District Judge, concur in this dissent.