PEARL F. SEARS ET AL., APPELLEES AND CROSS-APPELLANTS, v. MID-CITY MOTORS, INC., A CORPORATION, APPELLANT AND CROSS-APPELLEE, IMPLEADED WITH SAMUEL I. ROTHENBERG ET AL., A COPARTNERSHIP, DOING BUSINESS AS SERVICE JUNK COMPANY, APPELLEES AND CROSS-APPELLEES.

136 N. W. 2d 428

Filed July 23, 1965. No. 35683.

Abrahams, Kaslow, Story & Cassman and Robert C. Oberbillig, for appellant.

Gross, Welch, Vinardi, Kauffman & Schatz and Haney, Walsh & Wall, for appellees Sears et al.

Cassem, Tierney, Adams & Henatsch, for appellees Rothenberg et al.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

SMITH, J.

Fire damage to a building is the subject of this negligence action. Plaintiff-owners recovered a judgment on a verdict against Mid-City Motors, Inc., their lessee, on the theory of a principal's vicarious liability; however, their claim against Service Junk Company, the alleged agent, was dismissed. Mid-City appealed and plaintiffs cross-appealed from the order of dismissal.

The dismissal was affirmed and Mid-City's motion for judgment notwithstanding the verdict was sustained in an opinion at 178 Neb. 175, 132 N. W. 2d 361. After reargument we now withdraw that opinion.

Plaintiffs complain that their case against the agent should have been sent to the jury and that the district

court erred in sustaining objections to a hypothetical question. Mid-City contends: (1) A quasi-admission was erroneously received in evidence; (2) the judgments for the agent and against the principal are inconsistent; and (3) the existence of a principal-agent relationship is speculative.

Causation is the pivotal issue relating to the dismissal. The sufficiency of evidence depends upon the reasonableness of inferences from a substantial lag between negligence and detection of the fire.

Mid-City rented, stored, serviced, and repaired motor vehicles on the top floor, which was near street level. At points north of center a vertical 6-inch steel pipe passed through the concrete floor and a Celotex ceiling 14 feet high. The conduit and a horizontal connecting 4-inch pipe were anchored by metal brackets attached to wood. They formed part of a sprinkler system which was no longer in use. The Celotex ceiling was nailed to "rafters."

In performance of a contract between the defendants but without notice to plaintiffs, two employees of the salvage company were engaged in removing the pipes on January 9, 1959, the day before discovery of the fire. Work began in the morning but as late as 3 p.m. pipe was being cut with an acetylene torch at a place 4 inches below the ceiling. Since the men used no shields, fragments of molten metal, seen as flying sparks, passed close enough to ignite the Celotex. Upon completion of the day's work some minutes later, they inspected the area except the attic. They found no fire.

Mid-City was conducting its business until 12:30 a.m. the following morning. There was no indication that the Celotex was smoldering. An inspection of vehicles shortly prior to closing was also negative.

The first alarm was given at 1:41 a.m., the second at 1:47 a.m. While approaching the building, firemen noticed smoke and flame aloft and near a 16- by 40-foot skylight in the center of the roof. One of them esti-

mated that the building had been burning at least one-half hour and at most one hour. From a place several feet inside an entrance they saw a red glow in the direction of the ceiling center.

Celotex will not normally flame, but it may smolder indefinitely. In experiments the ceiling material was reduced to ashes by slow combustion at the rate of 1 inch per minute. Odorous gas and smoke were emitted. The process was similar to the action of punk used to light fuses of fireworks.

The ignition temperatures of Celotex and wood are 1,500 and 700 degrees respectively. Steel melts at 2,700 degrees, but an acetylene torch can create heat up to 5,000 degrees.

Since causation is not reasonably inferable, the order of dismissal is right. Difficulty in determining the moment which separates sufficient evidence from insufficient evidence is readily conceded. Yet we are unwilling to say that time counts not at all, that judicial restraint on jury power is mercurial. It is enough that in law the time between pipe cutting and fire detection was too long under the circumstances.

Plaintiffs' other contention is groundless. The hypothetical question ranged far and wide. Counsel for plaintiffs asked their expert witness whether Celotex "could smoulder undetected for a period of ten to twelve hours, and then ignite other material or burst into flame, causing an extensive fire?" General objections were sustained. Later the witness testified that the material may smolder indefinitely.

The excluded evidence was worthless. See, McNaught v. New York Life Ins. Co., judgment reversed on rehearing, 143 Neb. 220, 12 N. W. 2d 108; Neal v. Missouri P. Ry. Co., 98 Neb. 460, 153 N. W. 492; Missouri P. Ry. Co. v. Fox, 56 Neb. 746, 77 N. W. 130. "* * * whenever the point is reached at which the tribunal is being told that which it is itself entirely equipped to determine without the witness' aid * * *, his testimony is super-

fluous * * *." 7 Wigmore on Evidence (3d Ed.), § 1918, p. 11.

In returning a verdict against Mid-City, the jury presumably acted upon some quasi-admissions in a petition which Meeks Rent-A-Car Company had filed on July 19, 1960, in another action against the salvage company. The exhibit was received in evidence against Mid-City alone.

The exhibit alleges that in removal of the pipes the defendant by use of an acetylene torch caused sparks to pierce the Celotex ceiling, that the fire eventually spread to other parts of the building, and that the damage was the proximate result of defendant's negligence in specified particulars.

It was received over objections that it was incompetent, irrelevant, and immaterial; that no foundation had been laid; and that it had been based on information obtained after the fire. Mid-City now contends that it was not identified with Meeks and that the exhibit was signed and verified by an attorney without proof that the client knew the contents.

The first contention has no merit. The corporate name was changed May 14, 1959. A certificate states that the resolution amending the articles of incorporation was adopted at a special meeting attended by all stockholders and directors. It bears the signature of John R. McCormack as secretary of the meeting. Neither certificate nor resolution was impeached. Indeed both were substantially corroborated. The faint suggestion of separate corporations is hardly credible.

The second is rejected on a procedural ground. The pleading was verified by John R. McCormack, attorney for the corporation at the time of the fire. The secretary-treasurer was unaware of the petition, but no further showing appears.

We look at the ruling in its setting. "Review is limited where a general objection has been overruled. It reaches only an obvious flaw; otherwise, specification

is required. * * * A trial court possesses a discretion." Campbell v. City of North Platte, 178 Neb. 244, 132 N. W. 2d 876. See, also, Kennedy v. Woods, 131 Neb. 217, 267 N. W. 390.

Reception was discretionary in spite of no direct evidence that any agent other than McCormack approved the allegations, particularly where the propriety of an exclusionary ruling on specific objection would be debatable. See, Paxton v. State, 59 Neb. 460, 81 N. W. 383, 80 Am. S. R. 689, judgment sustained on rehearing, 60 Neb. 763, 84 N. W. 254; Frank R. Jelleff, Inc. v. Braden, 233 F. 2d 671, 63 A. L. R. 2d 400; McCormick on Evidence, § 242, p. 513; 4 Wigmore on Evidence (3d Ed.), § 1066, p. 53. The contention comes too late.

Overthrowal of the verdict is unwarrantable. The difference in evidence against the two defendants accounts for the dismissal of the one and the vicarious liability of the other. However, Mid-City insists that the judgments are inconsistent.

If a master is to respond in damages solely on account of his servant's negligence, a judgment dismissing the servant but holding the master is with some exceptions not self-consistent. See, Bohmont v. Moore, 138 Neb. 784, 295 N. W. 419, 133 A. L. R. 270; Forsha v. Nebraska Moline Plow Co., 94 Neb. 512, 143 N. W. 453; Zitnik v. Union P. R.R. Co., 91 Neb. 679, 136 N. W. 995; Gerner v. Yates, 61 Neb. 100, 84 N. W. 596. The rule applies where the material evidence against both defendants is the same. See, Lewis v. Union P. R.R. Co., 118 Neb. 705, 226 N. W. 318; Mansfield v. Farmers State Bank, 112 Neb. 583, 200 N. W. 53; Young v. Rohrbough, judgment reversed on rehearing, 86 Neb. 279, 125 N. W. 513; Chicago, St. P., M. & O. Ry. Co. v. McManigal, 73 Neb. 580, 103 N. W. 305, judgment modified on rehearing, 73 Neb. 585, 107 N. W. 243.

The judgments here conform with traditional concepts of regularity. The tautology for producing inconsistency seems to include a law that events acquire

a standing independent of evidence, i.e., that rules permitting admission of evidence for limited purposes are meaningless. Such a system will not do.

The finding of agency implied by the general verdict is said to be speculative. The salvage company agreed to perform the work at its expense and to pay Mid-City any difference between the value of the pipe and the labor cost of removal. Mid-City agreed to furnish help or direction upon request of the workmen.

The testimony is open to a reasonable inference that Mid-City had the right to exercise substantial control over the details of the work. The right of control is ordinarily a question of fact. See, Mansfield v. Andrew Murphy & Son, 139 Neb. 793, 298 N. W. 749; Curry v. Bruns, 136 Neb. 74, 285 N. W. 88.

The judgments are affirmed.

AFFIRMED.

CARTER, J., dissenting.

In my judgment, the opinion adopted by the court is manifestly wrong in at least two respects.

This is an action for negligence. The negligence is claimed to have arisen because of the failure of two employees of Service Junk Company to properly handle a cutting torch while removing an old, unused sprinkler system from the premises leased from the plaintiffs by Mid-City Motors. The action was brought by the owners of the building against Mid-City Motors and the Service Junk Company. The trial court found that negligence was not proved against the Service Junk Company, and dismissed the action as to it. This court affirms this action of the trial court. The trial court submitted the issue of negligence by Mid-City Motors to the jury, which returned a verdict in the amount of $37,400 against it. This leaves the situation in the anomalous position of holding that the employees performing the work were not negligent as to their employer, Service Junk Company, but negligent as to Mid-City Motors, unless there

was a separate and different cause of action against Mid-City Motors.

Mid-City Motors was formerly known as Meeks Rent-A-Car Company. I do not question that they were one and the same corporation at all times pertinent to this litigation.

Meeks Rent-A-Car Company entered into an agreement with Service Junk Company whereby the latter agreed to remove the sprinkler system and to pay back to Meeks Rent-A-Car Company the difference between the value of the material removed and the cost of removal. Pursuant to this agreement, one of the partners of Service Junk Company took two of its employees to the Mid-City Motors building and instructed them on the work to be performed. One of the employees was an expert in the use of a cutting torch and its dangers. It is stated in the majority opinion that: "The testimony is open to a reasonable inference that Mid-City had the right to exercise substantial control over the details of the work." The majority opinion carries implications in its various parts that a principal and agent, master and servant, and employer and employee relationship existed. I submit that the record will not sustain a finding that any one of such relationships existed.

The only evidence bearing directly on the existing relationship is the evidence of a partner of Service Junk Company. His evidence is: "Q. Did you send or bring anyone else up there to supervise their work? A. No; Mr. Meeks told me that this foreman in there would help them on any situation that they needed; if anything they wanted, to sure go to him, and any kind of help they needed, why, he would give them any kind of help. Q. In other words, Mr. Meeks told you that if the men had any questions, they were to ask his foreman? * * * A. Yes; sir, if they wanted to know any certain thing, they could ask him." The Mr. Meeks referred to was the president of Meeks Rent-A-Car Company. The business of renting, storing, servicing, and

repairing motor vehicles was to continue while the sprinkler system was being removed. Mr. Meeks merely assured cooperation by his employees while the employees of Service Junk Company removed the sprinkler system. There is not a scintilla of evidence in this record that Mid-City Motors or its employees had the right to or did direct the manner of using the cutting torch or the details of its use. The reasonable inference referred to in the opinion is an assertion unsupported by the record. Certainly the right of Service Junk Company to control the details of the work was superior to any such right by Meeks Rent-A-Car Company, and Service Junk Company was determined not to be liable.

I submit that Service Junk Company was an independent contractor. The two employees who performed the work were hired, paid, and controlled by the Service Junk Company. There is no evidence of a principal and agent, master and servant, or employer and employee relationship between Mid-City Motors and Service Junk Company or its employees, as the majority opinion infers.

I submit that even if one of these relationships did exist, the evidence of negligence by the two employees of Service Junk Company could be no different against Mid-City Motors than against Service Junk Company. The majority opinion holds that there was other evidence to sustain a judgment against Mid-City Motors which gives rise to the second point to which I dissent.

The evidence shows that Meeks Rent-A-Car Company brought an action against Service Junk Company alleging that the fire was caused by the negligence of the employees of Service Junk Company. On the trial of the instant case the court found in favor of Service Junk Company. It is the contention of plaintiffs that the petition filed in that case was an admission against interest of Meeks Rent-A-Car Company and admissible against Mid-City Motors. I submit that the petition

so filed was not an admission against interest for the reasons following.

In the petition filed by Meeks Rent-A-Car Company, eight specifications of negligence were alleged against Service Junk Company which it was unable to establish. The petition alleged that the two workmen were at all times acting individually and not as agents, servants, and employees of Meeks Rent-A-Car Company. It is plain, therefore, that Meeks Rent-A-Car Company never admitted any relationship out of which a vicarious lia-bility arose. Nor did it in any way admit fault on its part, or any fact from which liability could arise. The pertinent part of the pleading is: "That at all times material herein the plaintiff Meeks Rent-A-Car Company, a corporation, was in no way in charge of or exercising control or supervision over the actions of the defendant Samuel I. Rothenberg and Jack Levy, co-partnership d/b/a Service Junk Company; that the said defendants were at all times hereinafter mentioned acting individually and not as agents, servants and employees of the plaintiff Meeks Rent-A-Car Company, a corporation." The petition is not an admission against the interest of Meeks Rent-A-Car Company and is in fact a denial of liability on its part of negligence or any vicarious liability because of the relationship of the parties. The offer of the pleading was objected to as not containing any admission of any knowledge prior to the fire, and raised the issue of competency, the holding of the majority opinion notwithstanding. The contention of the majority that the objection made was insufficient to raise the question of the admissibility of the petition as an admission against interest is indeed a feeble one. The petition was not admissible as an admission against interest and objection thereto was sufficiently made. The petition was nothing more than an opinion as to liability for negligence on the facts alleged which the court held was not sustained by the evidence.

"To be competent as an admission a statement must

be one of fact, and a statement which is a mere opinion or conclusion or a conclusion of law is as a rule inadmissible. An admission by a party of his fault or of his adversary's freedom from fault is generally held admissible." 31A C. J. S., Evidence, § 272b, p. 700.

"Generally, a statement of a party must concern a material fact in order to be receivable as an admission against interest, and an extrajudicial statement as to declarant's opinion or conclusion is ordinarily inadmissible, as discussed supra § 272." 31A C. J. S., Evidence, § 317, p. 806.

"As a general rule, statements or admissions relating to a question of law or constituting conclusions of law or opinions as to what the law is, are not admissbile in evidence, for the reason that a party should not be affected by statements which may be attributed to a misapprehension of his legal right." 31A C. J. S., Evidence, § 272b, p. 701.

I question the adequacy of the court's opinion. A judicial opinion should cover four pertinent points: (1) The decision of the trial court, (2) the complaints of the party appealing, (3) a concise but adequate statement of the facts, and (4) the law applicable to the facts. The court's opinion in the instant case draws inferences and conclusions from facts not stated in the opinion and which I insist are not supported by the record. A litigant who has a judgment against him affirmed for $37,400, or any other amount, is certainly entitled to know the facts upon which it is based. Without an adequate statement of the facts to which announced rules of law are being applied, the opinion is of little use to the legal profession as a precedent. While I do not in any sense of the word impugn the sincerity and integrity of the majority, it is my view that an adequate statement of the facts shown by the record is essential to the maintenance of a court's integrity. The drawing of inferences and conclusions from unstated facts leaves the litigants and the bar in complete darkness as to

the meaning of the opinion. This is particularly true when a minority of the court asserts that the record does not support the inferences and conclusions drawn.

For the reasons herein stated, I cannot agree to the affirmance of the case on the law and facts, nor to the manner of its disposition by the majority opinion.

BROWER, J., concurs in this dissent.