BARBORA ZITNIK, ADMINISTRATRIX, APPELLEE, V. UNION
PACIFIC RAILROAD COMPANY, APPELLANT.

FILED JANUARY 30, 1914. No. 17,958.

1. Pleading: AMENDMENT OF PETITION: NEW CAUSE OF ACTION: LIMI-
TATIONS. In an action for the negligent killing of plaintiff's dece-
dent, plaintiff may amend her petition by alleging other and ad-
ditional grounds of negligence. Such amendment does not amount
to a departure, and does not render the petition vulnerable to a
plea of the statute of limitations, and evidence in support of the
new allegations is properly receivable. *Norfolk Beet-Sugar Co. v.
Hight*, 59 Neb. 100.

2. Judgment: DISMISSAL: VACATION OF ORDER: REINSTATEMENT OF CASE.
The district court has the power to set aside its orders and judg-
ments at the same term at which they are made or rendered, and
error cannot be predicated on a ruling setting aside an order dis-
missing the case as to one of the defendants and reinstating it as
to such defendant. *Bradley v. Slater*, 58 Neb. 554.

3. Master and Servant: NEGLIGENCE: CUSTOM: BURDEN OF PROOF: QUES-
TION FOR JURY. Where plaintiff alleges that it was the custom
of the defendant to station a man on the footboard in front of
its moving engines to warn trackmen of their approach, and that
defendant was guilty of negligence in not following such custom,
which negligence caused the death of plaintiff's decedent, the
burden of proof is on the plaintiff to establish the existence of
such a custom, by a preponderance of the evidence, and the ques-
tion whether such custom actually existed is one for the jury
to determine.

4. ———: ———: QUESTION FOR JURY. Where the facts in evidence
showed that the deceased was a track laborer working under the
direction of a foreman; that he was ordered by the foreman
to clear the switches and switch points of snow and ice which
might interfere with their use; that at that time the weather
was inclement, a strong northwest wind was blowing, some snow
was drifting, and the temperature was below zero; that, when
placed at work, the deceased wore a cap with a flap to it, which
was pulled down over his ears, and a knitted muffler; that the
work was such as to require his close attention and to necessitate
a stooping posture, *held*, that his position by reason of the cir-
cumstances was one of increased and peculiar danger, and the
question whether defendant was guilty of negligence in failing
to use reasonable care to warn the deceased of the approach of
moving engines or cars was properly submitted to the jury.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed on condition.*

*Edson Rich* and *John A. Sheean,* for appellant.

*Smyth, Smith & Schall, contra.*

LETTON, J.

This case is before us on a second appeal. It was first tried on the theory that engineer Mullen, who was in charge of the engine which ran over and killed plaintiff's decedent, was guilty of negligence in not seeing Zitnik upon defendant's track in time to have stopped his engine before the accident occurred. The jury, on the first trial, disagreed. The second trial was had upon the same issues, and resulted in a verdict for the defendant Mullen, acquitting him of the negligence charged; but plaintiff had a verdict against the defendant railroad company, and judgment was rendered on the verdict. From that judgment the defendant company brought the case to this court, where the judgment was reversed, and it was held that the verdict against the railroad company was inconsistent with the one finding that the engineer was not guilty of negligence, and, therefore, could not be sustained. The question as to whether or not the evidence would support a verdict against Mullen was unnecessary to determine, and was not involved. As to the fireman Walsh, however, the opinion seems to determine that on the evidence then presented no negligence was shown as to him. *Zitnik v. Union P. R. Co.,* 91 Neb. 679.

The cause was remanded for further proceedings, and before the third trial in the district court plaintiff filed an amended petition, in which she alleged that plaintiff's decedent at the time of his injury was within the protection of the federal employers' liability act (35 U. S. St. at Large, pt. 1, ch. 149, p. 65). The amended petition further set out specifically various acts of commission or omission on the part of the defendant as constituting negligence. It charged that Zitnik was accustomed to

work with a number of track laborers "under the direction of a foreman who, while they were at work upon the tracks, was accustomed to keep a lookout for approaching engines, cars and trains, and to give timely warning to them of danger from that source," that Zitnik "relied upon said company providing for him some person who would keep a lookout for the advance of engines;" that defendant negligently and carelessly failed to do so, although it knew that the nature of his work prevented him from keeping an effective lookout; that there was nothing to prevent the engineer and the crew of the engine from seeing Zitnik from the time the engine started until it struck him, but that they negligently and carelessly failed to see him, and thus caused the accident; that it was the custom of defendant to keep a man stationed upon the front footboard of the engine on the lookout when the engine was moving forward; that Zitnik relied upon this custom, but that on the morning of the accident the defendant negligently failed to provide a lookout; that on the morning of the accident, when Zitnik was directed by the foreman to clean out the switch points, it was extremely cold and a strong northwest wind was blowing; that it was necessary to protect his ears and head from the severity of the weather with a cap and muffler, which interfered with his hearing, as the foreman well knew, and that while engaged in the work he relied upon the defendant to provide him with some one to warn him of the approach of engines, as was the custom when working with associates, but that defendant negligently failed to provide such a person to give the warning; that the nature of the work prevented Zitnik from keeping an effective lookout, as the defendant well knew.

Defendant filed a motion to strike the amended petition from the files because it stated another and different cause of action from that contained in the original petition, which new cause of action was barred by the statute of limitations. The motion was overruled, and this ruling defendant assigns as error.

As we view the record, the amendment in question did not state a new or different cause of action from that stated in the original petition. The original petition merely contained the general allegations that, while Zitnik was engaged in the work described, "the defendants negligently and carelessly, and without any regard for the safety of the said John Zitnik, caused a locomotive switch engine belonging to the defendant railroad company to move against, upon and over the said John Zitnik, thereby negligently and carelessly inflicting upon the said John Zitnik injuries from which he died within a few hours thereafter." The amended petition merely amplified and set out more specifically the various acts of omission and commission of the defendant which it is claimed were included in the general allegations of negligence in the original petition. We think this is permissible, and that the amplification of the charge did not constitute the bringing of a new action for a different cause. *Smith v. Missouri P. R. Co.*, 56 Fed. 458; *Norfolk Beet-Sugar Co. v. Hight*, 59 Neb. 100.

*Johnson v. American Smelting & Refining Co.*, 80 Neb. 255, which seems to be relied upon by the defendant, is clearly distinguishable from the case at bar. In that case the original petition charged that the injury complained of was caused by the negligence of the company to whose rights the defendant succeeded, and the amended petition alleged that the injury was caused by the negligence of the defendant. It follows that the court did not err in refusing to strike the amended petition from the files.

Defendant contends that the court erred in sustaining the motion of the plaintiff to set aside the order dismissing the defendant Mullen. It appears that at the close of the plaintiff's testimony a motion was made by each of the defendants for a directed verdict. After argument the motions were taken under advisement over night by the court. The next morning, before the court ruled upon the motions, counsel for the plaintiff in open court dismissed the case as to defendant Mullen. Defendant's attorney then asked a continuance for a few hours to enable

it to present a petition and bond for removal to the circuit court of the United States. Plaintiff's attorney, having discovered that he had made a mistake as to the date of the federal employers' liability act in asking for such dismissal, moved to set the order aside. The court sustained the motion, and reinstated the case as to Mullen, over the objections of defendant. Thereupon, Mullen appeared and renewed his motion for a directed verdict, and the motion was sustained.

A controversy arose as to when a petition and bond for removal were presented, but we are content to abide by the finding of the district court made at the time on this point. The district court had the power to vacate or modify its own orders or judgments at any time during the term at which they were pronounced. *Bradley v. Slater,* 58 Neb. 554. It follows that the defendant cannot predicate error on this ruling.

It is also contended that the trial court erred in not directing a verdict for the defendant company, and in refusing to strike from the record so much of plaintiff's evidence as supports the new allegations in the amended petition. Since we have held the amendments proper, it could not be error to allow evidence in support of them. Much stress is laid upon the contention that the evidence as to the existence of a custom in the yards to keep a man stationed as a lookout on the front footboard of a switch engine moving forward is insufficient to warrant its submission to the jury. Two witnesses, both of whom had been employed by the defendant, and one of whom said, "I live right in the yards you may say," testified to the existence of such a custom. Their testimony was much weakened on cross-examination, and there was testimony to the contrary by a number of the defendant's employees. The weight and credibility of the testimony was for the jury, and, while the writer does not consider it of much probative value, a juryman seeing and hearing all the witnesses might be of a contrary opinion. We think the witnesses were competent to testify, and that no error was committed in its admission. Furthermore,

under the other allegations in the amended petition this question is of little moment. If we omit entirely the negligence predicated upon the failure to observe the alleged custom, it seems to us that a verdict for plaintiff is sustained upon the evidence tending to prove the allegations that Zitnik was accustomed to work under the direction of a foreman who knew, when he directed him to clean out the switches, that the day was exceedingly cold; that a strong northwest wind was blowing; that it was necessary on account of the severe weather for him to protect his ears with a cap and muffler, which interfered with his hearing; and that the nature of the work and his muffled condition prevented him from keeping an efficient lookout. The foreman testified that on the morning of the accident when he set Zitnik at work removing the snow he wore a cap with a flap to it and a gray knit muffler; that the cap was pulled down over his ears; that the day was clear, but the snow was drifting; that immediately after the accident he saw a round pile of snow about two feet high just inside of the track near the place where blood showed on the rail; and that a shovel and broom lay near-by. This and other testimony was sufficient to warrant the jury in finding that Zitnik was in the performance of the duty assigned to him at the time he was struck. This being so, what was the duty of the employer? The work that Zitnik was set to perform—the removal of snow and ice from the switches and points—was such as to require his close attention and to necessitate a stooping posture more or less. He was bundled up to resist the keen northwest wind. The temperature was below zero. From his position he could not at every moment look for engines or trains and at the same time do the work assigned him. The obstruction to his hearing caused by the cap and muffler was known to the foreman, and, therefore, to his employer. The defendant, therefore, placed Zitnik in a position of increased and peculiar danger owing to the inclement weather, and was in duty bound to exercise greater care than if ordinary conditions prevailed. These facts make the case easily distinguishable from that of *Glantz*

*v. Chicago, B. & Q. R. Co.,* 87 Neb. 60.  A case very simi-
lar in its facts to this is *Murran v. Chicago, M. & St. P. R.
Co.,* 86 Minn. 470.  The supreme court of that state has
adopted the same rule as announced by this court with
reference to the assumption of ordinary risks by section-
men and track laborers; but it held that the rule has its
exceptions, and that in view of the circumstances of the
strong wind, the snow in the air, the position which his
work of cleaning out snow from the switches required
him to assume, the work was extra hazardous, and the
question as to defendant's negligence in failing to warn
him of an approaching car and as to the existence of con-
tributory negligence was for the jury.  To the same pur-
port is the decision in *Davis v. New York, N. H. & H. R.
Co.,* 159 Mass. 532.  That court said:  "The defendant
had put the plaintiff in a position in which the more closely
he attended to his duty the less he was able to be on the
watch, and had put a foreman there for the express pur-
pose of warning him.  Under such circumstances the jury
well might say that the plaintiff was justified in relying
on the foreman's doing what the defendant admitted that
he was bound to do, and said that he did.  A man along-
side another in this way can make sure of his warning be-
ing understood.  The case is not like one where the only
warning relied on must come from the train."  There is
no direct testimony that the foreman was put in charge
for the express purpose of warning Zitnik; but the jury
well might find that, even though not set to do so by his
superiors, yet it was the duty of the foreman acting for
the master, under the surrounding circumstances, to ex-
ercise the necessary care to warn him of approaching
engines or cars, or that some other effective means of
warning should have been provided.  See, also, *St. Louis,
I. M. & S. R. Co. v. Jackson,* 78 Ark. 100, 8 Am. & Eng.
Ann. Cas. 328, and note on page 337.  Whether it was the
duty of the company to exercise more than ordinary care
to warn Zitnik was a question for the jury.  *Railway Co.,
v. Murphy,* 50 Ohio St. 135; *Crowley v. Burlington, C. R.
& N. R. Co.,* 65 Ia. 658.  And the question as to the de-

fendant's negligence in failing, either by the foreman or by some other means, to warn the deceased is also for the jury. *Comstock v. Union P. R. Co.,* 56 Kan. 228, 42 Pac. 724. The rule is a variation of the principle that, where the place furnished the servant to work is safe, but the intervention of a moving force renders it one of great danger, it is the duty of the master to exercise reasonable care to warn the workman. *Aho v. Adriatic Mining Co.,* 117 Minn. 504; *Wiggin v. Northwest Paper Co.,* 119 Minn. 273.

It is not improbable that as to the movements of regular trains moving upon schedule time a stricter rule of accountability on the part of the employee would apply; but as to switch engines moving upon such a day, and at any moment, the increased hazard demanded greater care to warn. The case of *Aerkfetz v. Humphreys,* 145 U. S. 418, cited by defendant, is not applicable. It lays down a rule for ordinary occasions, and not for peculiar conditions which increase the danger.

The instructions of the court as to the duty of Zitnik and the duty of the company with regard to the exercise of proper care under the circumstances is fully as favorable to the defendant as it had a right to ask.

Complaint is also made as to the giving of each of eleven other instructions covering every issue in the case. The reasonable limits of an opinion do not admit of the consideration of each contention made. In the main, and taking the whole charge together, we think the issues were fairly submitted to the jury, and that no prejudicial error is shown.

The evidence shows that Zitnik was engaged in interstate commerce under the rule laid down in *Mondou v. New York, N. H. & H. R. Co.,* 223 U. S. 1, 32 Sup. Ct. Rep. 169. Recovery in such case is for the benefit of the surviving widow and children of the deceased employee. It is insisted that, since Julius Zitnik, a son of the deceased, was over 21 years of age and self-supporting, he was not entitled to be considered as a beneficiary, and that the court erred in refusing an instruction to that

effect. The basis of recovery was not the number of children that Zitnik left surviving, it was the pecuniary damages suffered by his family on account of his death, and this, of course, necessarily depends upon his earning capacity, the amount he contributed to his family, and his expectancy of life. He was 51 years of age, his expectancy was about 20 years, and he had earned and devoted to his family from $450 to $480 a year. When he died his wife was pregnant, and was delivered soon afterwards of a posthumous child. The jury returned a verdict for $9,500. This sum invested at 5 per cent. interest would produce each year as much as Zitnik contributed to his family, and the whole amount would still be on hand. Plaintiff introduced proof to show that the purchase of an annuity of $480 per annum would cost about $7,000. We believe the verdict is excessive, and that it should be reduced to the sum of $7,000, which under all the evidence seems to be a fair measure of recovery.

The judgment of the district court is therefore reversed and the cause remanded for further proceedings, unless the plaintiff within 30 days enter a remittitur of $2,500, with interest on that amount from the date of the judgment. If such remittitur is filed, the judgment of the district court is affirmed.

AFFIRMED ON CONDITION.

BARNES, J., dissenting.

I find myself unable to concur in the majority opinion in this case. It appears that when the cause was remanded to the district court, after a reversal of the former judgment, the plaintiff amended her petition by adding thereto the allegation that it was the custom of the defendant to station a man on the footboard in front of its moving engines to warn trackmen of their approach, and that defendant was guilty of negligence in not following such custom, which negligence caused the death of the plaintiff's decedent. This allegation was denied, and, as I read the record, no competent evidence was produced by plaintiff tending to establish the fact alleged. This was the

only material change in the pleadings, and, aside from plaintiff's attempt to establish that issue, the evidence was the same as it was upon the former trial.  On the former appeal, *Zitnik v. Union P. R. Co.*, 91 Neb. 679, it was held: "The fact that the person injured was in a situation of danger and so situated that he could have been observed by the defendant must be proved by a preponderance of the evidence.  The jury is not at liberty to estimate the liabilities in that regard without substantial proof."

As I understand the record, it contains no substantial proof of any negligence on the part of the defendant company, and, in order to hold the defendant liable, it is necessary to conjecture a state of facts which the evidence itself fails to establish.

As I view the record in this case, the district court should have sustained the defendant's motion to direct a verdict in its favor.  Without further comment, I respectfully dissent from the majority opinion.

HAMER, J., joins in this dissent.