SULPHO-SALINE BATH COMPANY v. WINFRED E. ALLEN.

FILED NOVEMBER 6, 1902. No. 12,206.

Commissioner's opinion, Department No. 3.

1. **Bailee: NEGLIGENCE: BURDEN.** The burden is on a bailee for hire to show that property intrusted to his care was lost without negligence on his part.

2. **Bailment for Hire.** A bailment is for hire, although no direct hire is paid for the bailment, where it is a necessary incident of a business in which the bailee makes a profit.

3.  Federal Congress: RULES OF EVIDENCE IN STATE COURT.  The federal congress is not authorized to prescribe rules governing the admissibility of evidence in the courts of this state.

ERROR from the district court for Lancaster county.  Action in nature of special assumpsit by bailor against bailee for hire.  Tried below before HOLMES, J.  Judgment for plaintiff.  Defendant brings error.  *Affirmed.*

*Charles O. Whedon* and *J. A. Brown,* for plaintiff in error:

Plaintiff-below's testimony discloses negligence on his part in losing his key, or in allowing the same to be stolen while in his possession.  This negligence was the direct or proximate cause of the loss complained of, and plaintiff could not recover.  *Brady v. Chicago, St. P., M. & O. R. Co.,* 59 Nebr., 233; *Omaha H. R. Co. v. Doolittle,* 7 Nebr., 481.

*Frederick Shepherd, contra.*

DUFFIE, C.

The plaintiff in error operates a bath-house in the city of Lincoln, having among its other attractions a plunge bath.  In the office where tickets are sold is a system of drawers or boxes in charge of an attendant who presents one of them to any patron having valuables about his person, in which the valuables are deposited, the box returned to its proper place and locked, and the key given to the patron.  After taking his bath the visitor returns the key to the attendant, who unlocks and presents the drawer to the visitor, who, in this way, regains possession of such valuables as he may have deposited.  On the evening of July 21, 1900, Allen, the defendant in error, visited the bath-house, in company with one Chase, for the purpose of getting a bath.  On purchasing tickets, the attendant presented a box to each of them, in which they deposited their valuables, received the keys to their respective boxes, passed into the bath-room, each taking a separate dressing

room, where they disrobed, and afterward enjoyed their bath in the plunge. Allen testifies that he placed the key given to him in his coat pocket and that on returning to his dressing room he noticed that his clothing had been disarranged by some one during his absence in the bath, and his key was missing. He immediately notified the attendant from whom he had received the key, and was told that his property could not be returned until the managing official opened the boxes. The next morning he called at the bath-house and had a talk with the manager, who told him that his key had been turned in, and that his property was gone; that detectives had been employed; and requested him to call again a day or two later. The second day thereafter Allen again called upon the manager, and was told that nothing further had been learned, and, on Allen's demand to be paid the value of his property, payment was refused. This action was thereupon commenced to recover the value of the deposit, which, in his petition, Allen alleges was a gold watch of the value of $45, and currency to the amount of $116.

The answer is as follows:

"For answer to the petition of the plaintiff defendant admits that on or about the 21st day of July, 1900, plaintiff came to the defendant's bath-house to take a swim in its swimming pool; that before he went into said pool he without any request from defendant placed in a drawer at defendant's counter certain effects the kind, character and value of which if the same had value defendant was not at any time informed or advised, which drawer was securely locked and the key was then and there delivered to plaintiff who took the same away with him. Plaintiff never returned said key nor is defendant aware what disposition he made of it.

"Defendant denies each and every allegation and averment in the petition contained not hereinbefore specifically admitted.

"Wherefore defendant prays to be hence dismissed with costs."

We think the evidence fairly establishes the fact that a custom prevailed at the bath-house of inviting its patrons, when they purchased a ticket entitling them to a bath, to place their valuables in one of the boxes described. That this made the company a bailee of the property, can not be doubted. The evidence shows that the house had many patrons, that the dressing rooms were not provided with locks, thus rendering it necessary that some place should be provided for the safe-keeping of such valuables as visitors might have about their person while taking a bath.

In *Woodruff v. Painter*, 16 L. R. A. [Pa.], 451, a retail dealer in clothing was sued for the value of a watch which, at the direction of a clerk, he had placed in a drawer while trying on a suit of clothes. The court said (page 452): "When the defendants opened a retail clothing store they thereby invited the public to come into their place of business and purchase clothing in the usual manner; and when they extended this invitation they assumed some duty to the people who should respond to it. Even the householder who permits the use of a path leading to his house is deemed to hold out an invitation to all people who have any reasonable ground for coming thither to pass along his pathway, and is therefore held responsible for neglecting to fence off dangerous places. 1 Addison, Torts,* 203. So, too, a shopkeeper is liable for neglect on leaving a trap-door open without any protection by which his customers receive injury. *Parnaby v. Lancaster Canal Co.*, 11 Ad. & El. [Eng.], 223. In like manner it can not be doubted that, if these defendants had maintained or permitted a danger of any kind in their store, and by reason of it the plaintiff had sustained bodily injury, they would have been answerable to him for the consequences. In such case they would be said to have been guilty of negligence,—guilty of a neglect of duty which they owed to the customer; but I apprehend that the duty neglected would arise from an implied contract that, if

* Dudley & Baylies' edition.

customers would come to their store, no harm that could reasonably be averted should overtake them, and the consideration for such promise would be the chance of profit from their patronage. Upon principle the contract must be held to extend to the safety of such property as the customer necessarily or habitually in pursuance of a universal custom carries with him. Whatever thus necessarily, or in common with people generally, he habitually carries with him, and must necessarily lay aside in the store while making or examining his purchases, he is invited to lay aside by the invitation to come and purchase, and, having laid it aside upon such invitation and with the knowledge of the dealer, he has committed it to his custody. And, this being a necessary incident of the business upon which the customer was invited to come to the store, the care of the property would be within the authority of the salesman assigned to wait upon him; it would be part of the transaction in which he is authorized to represent his employer. This much was assumed without question in *Bunnell v. Stern,* 122 N. Y., 539, 10 L. R. A., 481, a case differing from the present in this only: that the article lost was a lady's cloak, and the saleswoman took no care whatever of it. Assuming that the jury would have found that a watch is such personal belonging as men usually carry with them, and that in the selection of a suit of clothes it is necessary or usual to remove it from the person, and lay it aside; and, further, that the plaintiff, by direction of the defendants' salesman, placed his watch in a designated drawer in the store, preparatory to the selection of a suit of clothes, to purchase which he visited the store,—the defendants thereby became chargeable as bailees. The principles which govern that relation are briefly and clearly stated by Judge Story, in his work on Bailments, thus: 'When the bailment is for the benefit of the bailor, the law requires only slight diligence on the part of the bailee, and of course makes him answerable only for gross neglect. When the bailment is for the sole benefit of the bailee, the

law requires great diligence on the part of the bailee, and makes him responsible for slight neglect. When the bailment is reciprocally beneficial to both parties, the law requires ordinary diligence on the part of the bailee, and makes him responsible for ordinary neglect. Manifestly the bailment, in a case like the present, is of the latter class, for, while the customer pays nothing directly, or *eo nomine,* for the safe-keeping of his effects, the dealer receives his recompense in the profits of the trade of which the bailment is a necessary incident. It was upon this principle that Lord Holt said, in *Lane v. Cotton,* 12 Mod. [Eng.], 473, 483, an action was sustainable against an inn-keeper for the loss of a guest's goods, and that the court of appeals affirmed the judgment of the court of common pleas of the city of New York in *Bunnell v. Stern, supra.'"*

The answer of the company, a bailee for hire, is peculiar. While admitting the receipt of the property, or of some property, there is no plea that ordinary care was exercised in its preservation or that it was lost or taken from the possession of the company without negligence on its part; and the evidence on the part of the defendant below is more barren than its plea. We have searched the record in vain for any testimony as to what became of the property. So far as the record discloses, it may still be in the company's possession. The only evidence in the record that the property was claimed and taken by some third party is a statement made by Allen, that during one of his calls the manager told him that the key had been turned in and that the property was gone. This statement, not under oath, can not be taken as evidence of the fact, especially when we consider that the manager and his clerk both testified on the trial, and made no attempt to show that the property was taken by a third party. Having received the property as bailee, the burden was on the defendant below to show that it was lost, if such was the case, without negligence upon its part.

Complaint is made of several of the instructions given by the court, and particularly those defining the law re-

lating to contributory negligence on the part of the plain, tiff.   To review these instructions in detail would occupy too much time and unduly extend this opinion.   It is sufficient to say that the defendant did not plead contributory negligence as a defense, and, if such a plea had been entered, there is no evidence from which contributory negligence on the part of the plaintiff could be inferred. The whole theory of the defense, as we gather it both from the answer and from the testimony offered by the defendant, was that it was under no obligation to return the plaintiff's property until he had returned the key of the box in which it had been deposited.   No time need be spent in demonstrating the unsoundness of such a defense.   If the company is still in possession of the plaintiff's property, or if it has been lost because of its want of ordinary care in its preservation, it must answer in damages for its value, even though the plaintiff below is unable to return the key through its being lost or stolen from him.   The verdict is the only one that could have been returned under the evidence, and technical error in the instructions, if any such there be, is error without prejudice.

Exception was taken to the action of the court in overruling the objections of the plaintiff in error to the use of the deposition of the defendant in error.   The defendant in error is now a resident of the state of Washington, and his deposition was taken and used upon the trial.   The certificate of the notary before whom the deposition was taken did not have an internal revenue stamp attached, and it is claimed that this rendered the deposition inadmissible in evidence under the provisions of the act of congress of June 13, 1898, entitled "An act to provide ways and means to meet war expenditures, and for other purposes."*   We have already held that the federal congress has no authority to make rules governing the admission of evidence in the courts of this state, or to determine what shall be competent or incompetent.   *Noble v. Citizens' Bank of Geneva,* 63 Nebr., 847.

*U. S. Compiled Statutes, 1901, p. 2296. 30 U. S. Statutes at Large, p. 455.

We discover no reversible error. in the record, and recommend the affirmance of the judgment.

AMES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.