H. JOE BOHMONT, APPELLEE, V. WILLIAM H. H. MOORE ET AL., APPELLANTS: MARTEL STATE BANK, APPELLANT.*

295 N. W. 419

FILED DECEMBER 20, 1940.   No. 30902.

*Rehearing denied.  See p. 907, *post.*

*Mockett & Finkelstein* and *Peterson & Devoe,* for appellants.

*Lloyd E. Chapman, contra.*

*Amos Thomas, Hendricks & Kokjer* and *Hall, Cline & Williams, amici curiæ.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ., and TEWELL, District Judge.

MESSMORE, J.

This is a law action wherein plaintiff charges defendants with negligence, alleging that he placed the sum of $14,000 in a safe deposit box which he rented from defendant bank, and when he later called for the box to take therefrom the money it was missing; that the defendants refused to pay or return such amount to him on his demand, denying negligence on their part. The jury, by a 10 to 2 verdict, found for the plaintiff. Defendants appeal.

The defendant bank maintains some 125 safe deposit boxes of the kind generally used in banks of the same, or larger, size, for the purpose of renting such boxes to its patrons and others, advertised such fact on its building, and made a nominal charge for the rent thereof, depending on the size of the box. The boxes were contained in steel nests of 25 boxes in each nest. Each box is manufactured so that it can be opened only by insertion in the lock of two keys, one known as the master key, kept by the bank, the other key retained by the renter. To open the box the master key is first inserted; it turns the lock partially; the renter then inserts his key in the same lock, to turn the lock completely and open the box.

Early in the year 1919, the plaintiff rented safe deposit box No. 83. He claims that one Lon Stuckey, in November, 1919, made a gift to him of $10,000, consisting of three 1,000-dollar bills, 20 100-dollar bills, and 100 50-dollar bills, which he placed in box No. 83 in November, 1919. The evidence is in dispute as to whether, when plaintiff rented the box, he was told that it was for keeping insurance papers, and other papers which he did not want to lose, but not for the safe-keeping of Liberty bonds or money. The plaintiff did purchase from the bank and leave for safe-keeping Liberty bonds.

Lon Stuckey engaged in farming in the Martell community from 1887 to 1894 with the plaintiff's father and lived in the household,—in fact, lived there when plaintiff was born November 2, 1889,—until 1894, when he moved to another farm owned by him. Throughout all of plaintiff's life he was favored by Stuckey until Stuckey died by taking his life January 15, 1920. The plaintiff in 1910 purchased a relinquishment of land in Colorado, going there to prove up on the same as a homestead. He was induced to return to the Martell vicinity in 1912, and Mr. Stuckey built a nine-room house on his farm for the plaintiff and his family. In 1911 Stuckey made a will, giving all of his estate, real and personal, to the plaintiff, the gross amount of which approximated $27,740. The plaintiff mortgaged the farm which he had inherited from Stuckey for the purpose of building a garage and entered into the Ford sales and repair business in Martell. He remained in this business until 1922. The farm was sold for $13,500, the mortgage paid, and plaintiff had left $3,000; he was indebted to the Sprague State Bank in the sum of $2,500. During the period from 1921 to 1924, he claims, he placed in safe deposit box No. 40, the box used by Mr. Stuckey and rented by him in 1918, the sum of $5,000. In 1925 the plaintiff moved to Colorado, near Julesburg, where he rented land and engaged in ranching and in the stock business. In March or April, 1928, he returned to Martell, went to the bank, had both safe deposit boxes, Nos. 40 and

83, brought to him, took from box 40 the sum of $1,000 and placed the remaining $4,000 in box 83, and surrendered box 40. This evidence is corroborated by his son Carl. There is a dispute in the evidence as to whether plaintiff was using box 40 in 1928. One Sieck claims to have rented box 40 from and after October 17, 1925, and until released by him in 1937, and a receipt issued by the bank shows box 40 was surrendered March 7, 1925, rent paid to date, and rent paid on box 83, by the plaintiff. From the time plaintiff left the bank in 1928 to return to Colorado, his wife had possession of the key to box 83 at all times. There is a dispute as to whether plaintiff was in the Martell State Bank in 1936 and had or examined the contents of box 83 at that time. The purpose was to show that plaintiff's wife did not have continuous possession of the key to box 83.

On November 2, 1938, plaintiff and his son Carl returned from Colorado to Martell, went to the bank and, after a general conversation with defendant Moore and others, the plaintiff asked for box No. 83. Mr. Moore, president of the bank, went to the vault, obtained the box, brought it out and placed it on the counter before the plaintiff. The son Carl testified: "Q. All right; then the box was brought out and set on the counter; then what happened? A. My father lifted the lid and started examining the box. Q. Then what happened? A. He looked up at Mr. Moore; Mr. Moore said, 'What is the matter, is something wrong?' And father said, 'Yes; somebody has been in my box and I have been robbed.' Q. Then what happened? A. Mr. Moore said, 'That could not be, nobody could get in the box but you.' And Mr. Moore said, 'How much money did you have in the box?' And he said, 'I had fourteen thousand dollars in the box.' And my father said he wanted his money." Plaintiff then related the transfer of the money made by him in 1928 from box 40 to box 83. His explanation of his reason for going to the bank November 2, 1938, was that Mr. Stuckey had given him the $10,000 with the admonishment that he supplement it with $5,000

and use no part of the 10,000-dollar gift until his fiftieth birthday, and November 2, 1938, was his fiftieth birth anniversary.

The record discloses that at all times when the plaintiff asked for and received his box, No. 83, the only persons who obtained it for him were defendants Moore and Sittler, the former president and the latter cashier of the bank; that one of them would go to the vault, obtain the box, and bring it to the counter, and when the plaintiff had finished examining the contents of the box it would be taken back to the vault by either Moore or Sittler. Plaintiff was never in the vault, never asked to go and never accompanied either of these persons to the vault to obtain his box at any time. There is a dispute as to whether the plaintiff's position at the counter would enable him to see box 83 in the vault and what may have occurred there on his visits to the bank. There was no evidence that the box had been tampered with in any manner. The record further discloses deposits made by plaintiff in the Martell bank from 1919 to and including 1925, aggregating $108,-034.90, and deposits made in the First National Bank of Julesburg from the year 1925 to and including 1938, aggregating $118,586.91. There is a history of many chattel mortgages issued to the bank of Julesburg and releases thereof, and many items of interest paid on loans by plaintiff from the Martell State Bank, at the rate of 8 per cent. per annum, amounting to $1,400; interest to the Sprague bank in the sum of $500, and to the First National Bank of Julesburg at the rate of 10 per cent. per annum on a number of the loans and 8 per cent. on others, amounting to $2,500; interest to the Aetna Life Insurance Company, amounting to $1,880; also interest paid to individuals, interest on machinery bought, and to the Regional Agricultural Credit Corporation, all of these payments being made during the time that the $14,000 is alleged to have been kept in deposit box No. 83.

In April, 1938, plaintiff's parents made application for old-age assistance. Plaintiff was asked in writing about

his ability to contribute to their support, and he replied: "I am having a hard time of keeping the wolf from my door * * * and eat once in a while." We have here given a general statement of the pertinent evidence which will suffice for the purpose of this opinion, in view of the contentions of the defendants as to the errors committed by the trial court, requiring a reversal.

The defendants first contend that the court erred in giving instruction No. 4 on its own motion. It is agreed that negligence is the gravamen of the action.

Negligence is the "omission to do something which a reasonable and prudent man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a reasonable, prudent man would not do; want of that degree of care that an ordinarily prudent person would have exercised under the same circumstances." 45 C. J. 628.

The plaintiff contends that, when the renter of a box proves, first, the existence of the contract of rental, second, the deposit of money, or other valuables, under the agreement, and, third, the failure to return the money, or other valuables, on demand, if the bank renting the box then fails to explain or excuse the nondelivery, it is liable in damages, just as any other bailee for hire; that the *prima facie* case, when made, rests upon a presumption of negligence on the part of the depositary, which must be rebutted to escape liability. In support of this contention, the case of *Sulpho-Saline Bath Co. v. Allen*, 66 Neb. 295, 92 N. W. 354, is cited, in which this court held: "The burden is on a bailee for hire to show that property intrusted to his care was lost without negligence on his part."

The whole theory of the defense is that the defendants were under no obligation to return the plaintiff's property until the plaintiff had returned the key to the box wherein his property had been deposited. The receipt of some property was admitted, but there was no allegation that ordinary care and lack of negligence had been exercised by defendant bank in the preservation of such property.

It has been well said in note, 43 L. R. A. n. s. at page 1172: "The following cases, although containing language which in itself might indicate that the court regarded the bailee as having the burden of proof to establish due care by a preponderance of the evidence, must be construed, in view of other decisions in the same state, simply as authority for the proposition that, in case of injury to or loss of the property, the burden of overcoming a presumption of negligence rests upon the bailee." Citing *Sulpho-Saline Bath Co. v. Allen, supra.*

The case of *Schaefer v. Washington Safety Deposit Co.,* 281 Ill. 43, 117 N. E. 781, is cited as a case exactly like the one at bar. A certain amount of money was placed in a deposit box by the plaintiff. When she returned to obtain her money from the box it was gone. She demanded that the defendant return her money, which the defendant failed to do. The court said that, "if those facts were found from a preponderance of the evidence they would make out a *prima facie* case in favor of the plaintiff, and it then devolved upon the defendant to prove that it used ordinary care and diligence to safely keep and return the plaintiff's money." The court said that the plaintiff was "bargaining for safety which the defendant advertised as its business and for the exercise of such care as a reasonably prudent man would exercise toward the safety of like property of his own under like conditions." And further: "Under such conditions we see no reason to depart from the ordinary rule that where a bailee receives property and fails to return it the presumption arises that the loss was due to his negligence, and the law imposes on him the burden of showing that he exercised the degree of care required by the nature of the bailment * * * To call upon the plaintiff, under such circumstances, to prove some specific act of negligence by which her money was lost, and which she must necessarily prove by defendant's employees, would impose upon her a practically impossible burden." See, also, *McDonald v. Perkins & Co.,* 133 Wash. 622, 234 Pac. 456, 40 A. L. R. 859; *Lockwood v. Manhattan Storage &*

*Warehouse Co.,* 28 App. Div. 68, 50 N. Y. Supp. 974; *Security Storage & Trust Co. v. Martin,* 144 Md. 536, 125 Atl. 449; *National Safe Deposit Co. v. Stead,* 250 Ill. 584, 95 N. E. 973; *Id.,* 232 U. S. 58, 34 S. Ct. 209.

*Miles v. International Hotel Co.,* 289 Ill. 320, 124 N. E. 599, apparently repudiates the proposition that the bailee has the burden of proof in such manner as stated in *Schaefer v. Washington Safety Deposit Co., supra.* The following language is pertinent: "The weight of modern authority holds the rule to be that where the bailor has shown that the goods were received in good condition by the bailee and were not returned to the bailor on demand the bailor has made out a case of *prima facie* negligence against the bailee, and the bailee must show that the loss or damage was caused without his fault." It was further said in the *Miles* case that the bailee may overcome the *prima facie* case "by offering evidence to show that it was not negligent, and if it produces such evidence, the bailor, in order to make out her case, must show that the bailee was, in fact, negligent and that its negligence caused the loss or contributed thereto."

We are convinced, after a careful reading of the authorities, that the best-reasoned rule is stated in the following authorities cited by the defendants:

"Where the depositor has alleged negligence, however, the better rule appears to be that the burden of the depositor as plaintiff, and not the duty of the company to go forward with evidence to overcome the depositor's *prima facie* case, is the one which must be met, on the issue of negligence or due care, by a preponderance of evidence." 6 Am. Jur. 494, sec. 428. And in the annotation, 40 A. L. R. 883, it is said: "But that the burden of proving negligence on the part of the lessor of a safe deposit box, in an action by the lessee, who alleges failure of the lessor to exercise ordinary care safely to keep the contents of the box, rests upon the plaintiff, the lessee, and does not shift, although the burden of producing evidence to overcome a *prima facie* case of negligence may rest on the defendant,

is held in *Koczora v. Standard Safe Deposit Co.* (1921) 221 Ill. App. 43."

The recent case of *Schmidt v. Twin City State Bank,* 151 Kan. 667, 100 Pac. (2d) 652, announces what we believe to be a proper rule with reference to necessary care: "Assuming the relation of the parties was that of bailor and bailee, as contended by plaintiff, defendant's duty was to exercise ordinary care and diligence, that is, such care and diligence as a reasonably prudent person or corporation would exercise under like circumstances in safeguarding the contents of the box. Defendant was required to take such measures to safeguard the property upon deposit as are customarily used in the community by ordinarily careful institutions, fairly comparable in size and other conditions with the defendant bank. 67 C. J., Warehousemen and Safe Depositaries, sec. 300; 27 R. C. L., Warehouses, sec. 45; *Shoeman v. Temple Safety Deposit Vaults,* 189 Ill. App. 316; *Young v. First. Nat. Bank of Oneida,* 150 Tenn. 451, 265 S. W. 681, 40 A. L. R. 868; *Morgan v. Citizens Bank,* 190 N. Car. 209, 129 S. E. 585, 42 A. L. R. 1299. See, also, annotation, 40 A. L. R. 874, 878."

In this state, when a party alleges and charges negligence, the burden of proving negligence on the part of the defendant rests upon the plaintiff and never shifts to defendant in any stage of the case. *Olson v. Omaha & C. B. Street R. Co.,* 137 Neb. 216, 289 N. W. 356; *Mercer v. Omaha & C. B. Street R. Co.,* 108 Neb. 532, 188 N. W. 296; *Rapp v. Sarpy County,* 71 Neb. 382, 98 N. W. 1042; *Vertrees v. Gage County,* 75 Neb. 332, 106 N. W. 331; *Lincoln Traction Co. v. Webb,* 73 Neb. 136, 139, 102 N. W. 258. In the instant case, negligence is the gravamen of the offense. The only indication in this state of such change might be manifest by paragraph 1 of the syllabus in *Sulpho-Saline Bath Co. v. Allen, supra,* which has been explained herein. We now turn our attention to instruction No. 4.

Much confusion is evident in judicial writing on the sub-

ject of presumption of negligence and its position in jury trials, and in this confused state of the law the blame cannot always be placed on the trial court for erroneous instructions, under the circumstances. Instruction No. 3 on the burden of proof, given by the court, which we will not here set out, is a proper instruction and requires the plaintiff to prove, by a preponderance of the evidence, negligence on the part of the defendants, as alleged in the petition, before plaintiff may recover. Instruction No. 4, given by the court, is as follows:

"You are further instructed that if you find from the evidence that the plaintiff placed $14,000 in United States currency in his safe deposit box in the bank of the defendant and that the same was not subsequently removed therefrom by the plaintiff or any one in his behalf, and that said currency was not produced and delivered to the plaintiff by the defendant upon demand by the plaintiff from defendant then, in the absence of any other evidence, *the law presumes that the loss or removal of said currency was caused by the negligence of the defendant in not exercising ordinary care and diligence in the safe-keeping of the contents of the said safe deposit box.* Said presumption is rebutted, however, if there is evidence adduced at the trial of equal weight and importance to that produced by the plaintiff that the loss or removal of said currency, if any of you so find, was due to another cause or causes consistent with ordinary care and diligence on the part of the defendant, and if it is so rebutted the burden is on the plaintiff to *show by a preponderance of the evidence that the loss or removal, if any you so find, was due to the negligence of the defendant.*

"*If evidence has not been produced of equal weight and importance to that introduced by the plaintiff that the loss or removal, if any you find, was due to another cause or causes consistent with ordinary care and diligence on its part, then the above presumption stands as proof of negligence on the part of the defendant.*" (Italics ours.)

"Ordinarily, in a civil action, a presumption is not evi-

dence, but a mere rule of law, and disappears when evidence on the subject is given." *Auld v. Auld,* 122 Neb. 576, 240 N. W. 756. See *Falkinburg v. Prudential Ins. Co.,* 132 Neb. 831, 273 N. W. 478.

" 'A presumption is not evidence of anything and only relates to a rule of law as to which party shall first go forward and produce evidence sustaining a matter in issue. A presumption will serve as and in the place of evidence in favor of one party or the other until *prima facie* evidence has been adduced by the opposite party, but the presumption should never be placed in the scale to be weighed as evidence.' *Honrath v. New York Life Ins. Co.,* 65 S. Dak. 480, 275 N. W. 258." *In re Estate of Kajewski,* 134 Neb. 485, 279 N. W. 185.

"The better reasoned authorities hold that a presumption is not evidence of a fact, but purely a conclusion, having no probative force, and designed only to sustain the burden of proof until evidence is introduced tending to overcome it. '\* \* \* When evidence is introduced rebutting the presumption, the presumption disappears, leaving in evidence the basic facts which are to be weighed.' " 1 Jones, Commentaries on Evidence (2d ed.) sec. 30. See, also, 9 Wigmore, Evidence (3d ed.) secs. 2490, 2491; *Peters v. Lohr,* 24 S. Dak. 605, 124 N. W. 853.; *Ebers v. Whitmore,* 122 Neb. 653, 241 N. W. 126; *Eckman Chemical Co. v. Chicago & N. W. R. Co.,* 107 Neb. 268, 185 N. W. 444; *Wise v. Grainger Bros. Co.,* 124 Neb. 391, 246 N. W. 733; *In re Estate of Kajewski, supra.*

The effect of instruction 4, given by the court in the instant case, is to tell the jury that, if plaintiff proved he put the money in box No. 83 and did not take it out, then the burden shifts to the defendants to prove that they were not negligent. Instruction No. 4 permits weighing defendants' evidence against the evidence of plaintiff for the purpose of determining whether a presumption of negligence is rebutted. The test is not whether defendants' evidence rebuts plaintiff's evidence, but whether defendants' evidence of due care rebuts any presumption the law per-

mits from the plaintiff's evidence. See *Mercer v. Omaha & C. B. Street R. Co., supra.*

Instruction No. 4 is erroneous in requiring evidence of equal weight to that produced by defendants to overcome the presumption, in stating that such presumption is evidence, and in instructing the jury that presumption of evidence is proof of negligence. Such instruction is not cured by a proper instruction, previously given, on the burden of proof.

"Where two conflicting instructions are given on a question, one containing an incorrect, and the other a correct, statement of the law, the latter will not cure the former." *Koehn v. City of Hastings,* 114 Neb. 106, 206 N. W. 19. See, also, *Brooks v. Thayer County,* 126 Neb. 610, 254 N. W. 413.

"An error in an instruction is not cured by the giving of other instructions, where such error consists, not of an omission of some material fact, but of an affirmative statement by the court which, when considered with the other instructions, tends to confuse the jury." *Wilch v. Western Asphalt Paving Corporation,* 124 Neb. 177, 245 N. W. 605. See, also, *Morton v. Harvey,* 57 Neb. 304, 77 N. W. 808.

We hold the giving of instruction No. 4, under the circumstances, to constitute reversible error.

It is noted from the record that the trial court sustained a motion for a directed verdict in favor of defendants Moore and Sittler. The evidence reflects that all of the transactions had by the plaintiff, with reference to safe deposit box No. 83, were with these defendants and not with any other employees of the bank, denoting that if there was negligence, as contended by the plaintiff, these two defendants would be the ones who would be guilty of such negligence and no other employees of the bank. The case was submitted to the jury as against the defendant bank. No cross-appeal was taken from the judgment of the court in favor of defendants Moore and Sittler.

"It is universally recognized that ordinary private corporations may commit almost any kind of a tort and be held liable therefor, and this liability may be enforced in the same manner as if the wrong complained of had been

committed by an individual." 13 Am. Jur. 1042, sec. 1118. Thus, the bank in the instant case is a tort-feasor, together with defendants Moore and Sittler.

"Where the liability of one party to an action is based entirely upon a wrongful act by another, a judgment necessarily based upon the finding that the first is liable and that the second is not, is inconsistent with itself unless the second party has a personal immunity or has been discharged from liability." Restatement, Torts, sec. 883.

Illustration 4. "A brings suit against B and C, alleging that B was negligent while acting in the scope of employment for C. Verdict and judgment are entered in favor of B and against C. The judgment against C should be set aside." Restatement, Torts, sec. 883. In the instant case, plaintiff instituted suit against the bank, Moore and Sittler, alleging negligence on the part of the defendants Moore and Sittler while in the scope of their employment for the bank. Motion for directed verdict in favor of defendants Moore and Sittler was sustained and unappealed from. Judgment was entered against the bank.

The same proposition is reflected by the following language in 34 C. J. 982: "If the liability of a person sued for tort is necessarily dependent upon the culpability of another, who was the immediate actor (in the instant case the immediate actors were Moore and Sittler) and who, in an action against him by the same plaintiff for the same act, has been adjudged not culpable, defendant may set up such judgment as a bar." And in 15 R. C. L. 956, sec. 432, it is said: "If the defendant's responsibility is necessarily dependent upon the culpability of another, who was the immediate actor, and who, in an action against him by the same plaintiff for the same act, has been adjudged not culpable, the defendant may have the benefit of that judgment as an estoppel."

Under the circumstances, the foregoing authorities are applicable, and the judgment against the bank is set aside.

For the reasons given in this opinion, the judgment of the district court is reversed and the cause remanded.

REVERSED.